UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NAUTILUS INSURANCE COMPANY, an Arizona corporation, <br><br> Plaintiff, <br><br> vs. <br><br> RICCIARDI DEVELOPMENT, LLC, an Illinois limited liability company, LOUIS M. RICCIARDI, individually, ATIT MANSURIA, individually, CAROLINA LANDEROS, individually, KATHLEEN T . HOGAN, individually, and ROBERT VALENTE, individually, <br><br> Defendants. | ) <br> ) <br> ) 11 C 6126 <br> ) <br> ) Judge Feinerman <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**MEMORANDUM OPINION AND ORDER**

The defendants in this insurance coverage case are on opposite sides of two tort suits pending in the Circuit Court of Cook County, Illinois. *Mansuria v. Hogan*, No. 09 L 6287 (Cook Cnty. Cir. Ct.); *Landeros v. Hogan*, No. 09 L 6308 (Cook Cnty. Cir. Ct.). The two suits are materially identical and have been consolidated, and thus will be treated as one. The state court plaintiffs are Atit Mansuria and Carolina Landeros. After falling from the second story porch of a Chicago building in May 2009, Mansuria and Landeros sued Ricciardi Development, LLC ("Development"), Louis M. Ricciardi ("Ricciardi"), Kathleen T. Hogan, and Robert Valente for negligent construction or renovation. Hogan and Valente cross-claimed against Ricciardi and Development for contribution and indemnification. Ricciardi and Development demanded a defense and indemnification from Nautilus Insurance Company, Development's insurer.

Nautilus then filed this case, seeking a declaratory judgment under 28 U.S.C. § 2201 that it has no duty to defend or indemnify Ricciardi and Development in the state court suit. Doc. 1.

Nautilus invokes this court's diversity jurisdiction under 28 U.S.C. § 1332(a)(1), which is proper because the parties are completely diverse and the amount in controversy exceeds $75,000. Nautilus has moved for summary judgment. Doc. 40. The motion is granted.

## Background

Consistent with the local rules, Nautilus filed a Local Rule 56.1(a)(3) statement of undisputed facts along with its summary judgment motion. Doc. 42. Defendants filed no Local Rule 56.1(b)(3)(B) response, so the facts set forth in Nautilus's Local Rule 56.1(a)(3) statement are deemed admitted. *See* N.D. Ill. L.R. 56.1(b)(3)(C) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."); *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880-81, 884 (7th Cir. 2012); *Parra v. Neal*, 614 F.3d 635, 636 (7th Cir. 2010); *Rao v. BP Prods. N. Am., Inc.*, 589 F.3d 389, 393 (7th Cir. 2009); *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006); *Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 943-44 (7th Cir. 2005); *Smith v. Lamz,* 321 F.3d 680, 682-83 (7th Cir. 2003). The pertinent facts are as follows.

Count IV of the operative state court complaint, which states a negligence claim against Ricciardi, alleges as follows:

    a.    Prior to May 24, 2009, [Ricciardi] owned, operated, managed, maintained, controlled, and renovated the building and attached outside wooden porch and guard rail system at 1005 S. Racine Avenue, Chicago, Illinois.

    b.    Prior to the sale of the aforesaid property, [Ricciardi] erected or renovated the attached wooden outside porch and guard rail system.

    c.    On May 24, 2009, [Mansuria/Landeros] was on the second floor back porch and was leaning against the porch railing system when the railing detached, causing [Mansuria/Landeros] to fall to the ground.

Doc. 42 at ¶¶ 3, 7. Count V of the state court complaint, which states a negligence claim against

Development, alleges as follows:

> a. Prior to May 24, 2009, [Development] owned, operated, managed,
> maintained, controlled, and renovated the building and attached outside
> wooden porch and guard rail system at 1005 S. Racine Avenue, Chicago,
> Illinois.
>
> b. On May 24, 2009, [Mansuria/Landeros] was on the second floor back
> porch and was leaning against the porch railing system when the railing
> detached, causing [Mansuria/Landeros] to fall to the ground.

*Id*. at ¶¶ 4, 8. Counts IV and V are not pleaded in the alternative. *Id*. at ¶¶ 5, 9. Hogan and

Valente filed a counterclaim for contribution and indemnification against Ricciardi and

Development. *Id*. at ¶ 10.

Nautilus issued Commercial Lines Policy No. NC827620 to Development, effective

September 11, 2008 to September 11, 2009. *Id*. at ¶ 23. The policy includes an Endorsement

entitled "Exclusion–Your Work Completed Prior to Specified Date," which provides:

> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
>
> SCHEDULE
>
> Date: 09/11/2008
>
> A. The following exclusion is added to 2. Exclusions of Section
> I—Coverage A—Bodily Injury And Property Damage Liability: This
> insurance does not apply to "bodily injury" or "property damage" included
> in the "products-completed operations hazard" and arising out of "your
> work" that was completed by or on behalf of any insured prior to the date
> shown in the Schedule.
>
> B. We will have no duty to defend any insured against any loss, claim,
> "suit" or other proceeding seeking damages for "bodily injury" or "property
> damage" arising out of "your work" that was completed by or on behalf of
> any insured prior to the date shown in the schedule.

*Id*. at ¶ 24; Doc. 42-9 at 52.

Ricciardi purchased the property in question (the one from whose porch Mansuria and Landeros fell) on October 11, 2000, and sold it on February 22, 2005. Doc. 42 at ¶ 16 (citing Ricciardi's and Development's interrogatory responses). Hogan and Valente owned the property from October 10, 2006, through February 20, 2012. *Id*. at ¶ 20 (citing Hogan's and Valente's interrogatory responses). Ricciardi installed or renovated the porch and guardrail at the property at some point between "2000-2005." *Id*. at ¶ 22 (citing Mansuria's and Landeros's interrogatory responses). As noted above, the state court complaint alleges that Ricciardi renovated the porch and guardrail before he sold the property. *Id*. at ¶¶ 3, 7.

## Discussion

Defendants filed no brief in opposition to Nautilus's summary judgment motion. Defendants' failure to respond "does not ... automatically result in judgment for" Nautilus, which "must still demonstrate that it is entitled to judgment as a matter of law." *Keeton*, 667 F.3d at 884 (internal quotation marks omitted). Nautilus does not address choice of law, but its brief cites Illinois law. Given the lack of disagreement from Defendants, that is the law the court will apply. *See McFarland v. Gen. Am. Life Ins. Co.*, 149 F.3d 583, 586 (7th Cir. 1998).

The Seventh Circuit has summarized Illinois law as it pertains to the interpretation of insurance policies as follows:

> In Illinois, insurance policies are contracts; the general rules governing the interpretation and construction of contracts govern the interpretation and construction of insurance policies. Illinois courts aim to ascertain and give effect to the intention of the parties, as expressed in the policy language, so long as doing so does not contravene public policy. In doing so, they read the policy as a whole and consider the type of insurance purchased, the risks involved, and the overall purpose of the contract. If the policy language is unambiguous, courts apply it as written. Policy terms that limit an insurer's

> liability are liberally construed in favor of coverage, but only when they are
> ambiguous, or susceptible to more than one reasonable interpretation.

*Clarendon Nat'l Ins. Co. v. Medina*, 645 F.3d 928, 933 (7th Cir. 2011) (citations omitted).

Although ambiguities are construed in the insured's favor, "a court will not search for ambiguity

where there is none." *Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 860 N.E.2d 307, 314 (Ill.

2006); *see also Native Am. Arts, Inc. v. Hartford Cas. Ins. Co.*, 435 F.3d 729, 732 (7th Cir.

2006). "[I]n construing a policy, governing legal authority must … be taken into account as

well, for a policy term may be considered unambiguous where it has acquired an established

legal meaning." *Ace Am. Ins. Co. v. RC2 Corp.*, 600 F.3d 763, 766 (7th Cir. 2010) (internal

quotation marks omitted). "Insurers have the burden of proving that an exclusion applies.

Insureds, in turn, have the burden to prove that an exception to an exclusion restores coverage."

*Santa's Best Craft, LLC v. St. Paul Fire & Marine Ins. Co.*, 611 F.3d 339, 347 (7th Cir. 2010)

(citation omitted).

The above-quoted exclusion to the Nautilus policy is pellucid. It says that the policy

"does not apply to 'bodily injury' or 'property damage' included in the 'products-completed

operations hazard' and arising out of 'your work' that was completed by or on behalf of any

insured prior to the date shown in the Schedule," which is "9/11/08." Doc. 42 at ¶ 24. The

exclusion adds that Nautilus "will have no duty to defend any insured against any loss, claim,

'suit' or other proceeding seeking damages for 'bodily injury' or 'property damage' arising out

of 'your work' that was completed by or on behalf of any insured prior to the date shown in the

schedule," which, again, is September 11, 2008. *Ibid*. Accordingly, the policy excludes

coverage for bodily injury claims arising out of work completed prior to September 11, 2008.

This means that if the tort claims against Ricciardi and Development arise out of work they

completed before September 11, 2008, the claims are not covered and Nautilus has no duty to defend them in the state court suit.

The outcome of this case turns on which materials the court can consider in determining whether the tort claims arise out of work completed before September 11, 2008. If the court may consider only the state court complaint, Nautilus likely would have a duty to defend. The state court complaint alleges that Ricciardi renovated the porch and guardrail before he sold the property, and that the sale took place "[p]rior to May 24, 2009." Doc. 42 at ¶¶ 3, 7. Because September 11, 2008, the policy's cut-off date, is prior to May 24, 2009, the complaint alleges a claim that potentially could fall within the policy's coverage. However, if the court may consider materials beyond the state court complaint—such as the undisputed evidence that Ricciardi sold the property on February 22, 2005, meaning that his work on the porch was completed before that date, well before the policy's cut-off date of September 11, 2008, *id*. at ¶¶ 3, 7, 16, 18, 20, 22—then there is no duty to defend.

The general rule under Illinois law is that a court, in determining whether an insurer has a duty to defend, may consider only the underlying complaint. "To determine whether an insurer has a duty to defend its insured, [the court] compare[s] the factual allegations of the underlying complaint (or … counterclaim) to the language of the insurance policy. If the facts alleged in the underlying complaint fall within, or potentially within, the policy's coverage, the insurer's duty to defend arises." *Amerisure Mut. Ins. Co. v. Microplastics, Inc.*, 622 F.3d 806, 810 (7th Cir. 2010) (citations and internal quotation marks omitted). An insurer may decline to defend only when "it is clear from the face of the underlying complaint that the allegations set forth … fail to state facts to bring a case within, or potentially within, the coverage of the policy." *Swiderski Elecs.*, 860 N.E.2d at 315; *see also Lyerla v. AMCO Ins. Co.*, 536 F.3d 684, 688 (7th Cir. 2008).

That is, "an insurer has no duty to defend unless the underlying claim contains explicit factual allegations that potentially fall within policy coverage." *Microplastics*, 622 F.3d at 810; *see also In re Country Mut. Ins. Co.*, 889 N.E.2d 209, 209-10 (Ill. 2007) ("[B]ecause the duty to defend is gauged by the allegations of the complaint, what the facts subsequently show is immaterial.  If the underlying complaint alleges facts within or potentially within policy coverage, an insurer is obligated to defend its insured even if the allegations are groundless, false or fraudulent."); *Lexmark Int'l, Inc. v. Transp. Ins. Co.*, 761 N.E.2d 1214, 1221 (Ill. App. 2001) ("only the allegations in the underlying complaint, considered in the context of the relevant policy provisions, … should determine whether an insurer owes a duty to defend an action brought against an insured.").  "Both the policy terms and the allegations in the underlying complaint are liberally construed in favor of the insured, and any doubts and ambiguities are resolved against the insurer." *Microplastics*, 622 F.3d at 811 (internal quotation marks omitted).

There is, however, an exception to the general rule:

> In determining whether the insurer owes a duty to the insured to defend an action brought against him, it is *the general rule* that the allegations of the [underlying] complaint determine the duty.  Although it is true that an insurer's duty to defend flows in the first instance from the allegations of the underlying complaint, this 'general rule' does not support the proposition that a court, in a declaratory judgment proceeding where an insurer's duty to defend is at issue, may never look beyond the allegations of the underlying complaint.

*Fremont Comp. Ins. Co. v. Ace-Chicago Great Dane Corp.*, 710 N.E.2d 132, 138 (Ill. App. 1999) (internal citations and quotation marks omitted) (alteration in original); *see also Am. Econ. Ins. Co. v. Holabird & Root*, 886 N.E.2d 1166, 1172 (Ill. App. 2008) ("the trial court may consider evidence beyond the underlying complaint in determining an insurer's duty to defend").

Put another way:

> It is certainly true that the duty to defend flows in the first instance from the allegations in the underlying complaint; this is the concern at the initial stage of the proceedings when an insurance company encounters the primary decision of whether to defend its insured. However, if an insurer opts to file a declaratory proceeding, we believe that it may properly challenge the existence of such a duty by offering evidence to prove that the insured's actions fell within the limitations of one of the policy's exclusions.

*Fid. & Cas. Co. of N.Y. v. Envirodyne Eng'rs, Inc.*, 461 N.E.2d 471, 473 (Ill. App. 1983); *see also Nautilus Ins. Co. v. 1452-4 N. Milwaukee Ave., LLC*, 562 F.3d 818, 824 (7th Cir. 2009) (citing *Envirodyne Eng'rs* with approval). In *Pekin Insurance Co. v. Wilson*, 930 N.E.2d 1011 (Ill. 2010), the Supreme Court of Illinois approved this exception. *Id*. at 1019-20; *see Gen. Ins. Co. of Am. v. Clark Mall Corp.*, 644 F.3d 375, 378 (7th Cir. 2011) (noting that *Wilson* "cited [*Envirodyne Eng'rs*] with approval"). The exception has an exception of its own: "The only time such evidence should not be permitted is when it tends to determine an issue crucial to the determination of the underlying lawsuit." *Envirodyne Eng'rs*, 461 N.E.2d at 474; *see also Ace-Chicago Great Dane Corp.*, 710 N.E.2d at 139 (same).

Application of these principles is illustrated by *Ace-Chicago Great Dane Corp.*, where the state appellate court affirmed the trial court's decision to consider evidence outside the complaint to determine whether the occurrence in the underlying lawsuit took place outside the coverage period. 710 N.E.2d at 139. The plaintiff in the underlying case claimed that the insured had negligently disposed of evidence (a ladder) that was relevant in another suit. *Id*. at 136. The underlying complaint alleged that the improper disposal occurred on July 26, 1991, a date within the policy's coverage period of July 29, 1990, through July 29, 1991. *Ibid*. However, extrinsic evidence indisputably showed that the ladder had still been in the insured's possession as late as August 21, 1991, which meant that the insured's alleged disposal of the ladder could not have occurred during the coverage period. *Id*. at 139. The appellate court held

that the trial court properly considered that extrinsic evidence in finding that the insured's

alleged disposal of the ladder must have occurred outside the coverage period, and therefore in

holding that the insurer had no duty to defend. *Ibid*. The evidence was permitted, the appellate

court explained, because "[t]he trial court's determination in this [insurance coverage] case in no

way resolve[d] the question of whether [the insured] did in fact dispose of the ladder or any other

issue relating to [the insured's] alleged liability [in the underlying case]." *Ibid*.

As in *Ace-Chicago Great Dane Corp.*, this court can and must consider the undisputed

extrinsic evidence set forth by Nautilus—that Ricciardi sold the property on February 22, 2005,

and completed the work on the porch and guardrail before then—in determining whether

Nautilus has a duty to defend Ricciardi and Development. There is no basis for concern that

considering this evidence would "tend[] to determine an issue crucial to the determination of the

underlying [state court] lawsuit." *Envirodyne Eng'rs*, 461 N.E.2d at 474. Indeed, the opposing

sides in the underlying suit unanimously agree in this case that Ricciardi sold the property in

February 2005 or, at a minimum, that he did not own the property as of September 11, 2008.

Doc. 42 at ¶¶ 16, 18 (Ricciardi and Development); *id*. at ¶ 20 (Hogan and Valente); *id*. at ¶ 22

(Mansuria and Landeros). If that fact were contested in or significant to the underlying suit, the

opposing sides in that suit would not have agreed on that fact here.

Because it is undisputed that Ricciardi and Development completed their work on the

porch and guardrail before September 11, 2008, the policy exclusion unambiguously applies and

Nautilus has no duty to defend. *See Allstate Ins. Co. v. Amato*, 865 N.E.2d 516, 524 (Ill. App.

2007) ("Because the language of the PUP [personal umbrella policy] unambiguously did not

provide coverage for wrongful detention of property and because the exclusions in the PUP

applied to the facts alleged in the underlying complaint against Amato, we find that Allstate did

not have a duty to defend or indemnify Amato under that policy."); *Nautilus Ins. Co. v. Raatz*, 2012 WL 2525976, at *7 (N.D. Ill. June 29, 2012) ("If that water pipe burst on November 2, 2007 [the first day of the policy coverage], and the 'prior work' provision was part of the insurance policy, then Nautilus would have no duty to defend a claim for damages stemming from the water pipe bursting—the 'work,' the installation of the pipe, would have occurred before November 2, 2007 and would be excluded from the policy by the 'prior work' provision."). And because Nautilus has no duty to defend in the underlying suit, it also has no duty to indemnify Ricciardi and Development in that suit. *See Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 620 N.E.2d 1073, 1081 (Ill. 1993) ("In cases such as the instant case where no duty to defend exists and the facts alleged do not even fall *potentially* within the insurance coverage, such facts alleged could obviously never *actually* fall within the scope of coverage. Under no scenario could a duty to indemnify arise. Clearly, where there is no duty to defend, there will be no duty to indemnify and we find that the plaintiff-insurers have no duty to defend or indemnify the insured[] in this case."); *see also Ace-Chicago Great Dane Corp.*, 710 N.E.2d at 136.

### Conclusion

For the foregoing reasons, Nautilus's motion for summary judgment is granted. The court declares that Nautilus has no duty to defend or indemnify Ricciardi or Development in the underlying state court suits.

November 9, 2012

_____
United States District Judge

-10-